manumitted agreeably to the laws of the state or made free in consequence of this Act, or the issue of any such slave shall give evidence against any white person," etc. The latter part of the same section gives them certain rights of freemen, "to hold property, to obtain redress in law and equity for any injury to their persons or property." The latter part controls or qualifies the former.

Negroes are allowed the same redress for injuries to their persons with whites. Indictment is one mode—principally useful when the party injured is the only witness to the facts necessary to be proved. The Act must be so construed as to allow the means absolutely necessary to obtain the redress, the right to which is given in express terms.

We still allow sufficient operation to the first part of the section, for we do not mean to say that a Negro is a competent witness between two whites, or in cases where other proof can be obtained, but only in cases where justice must otherwise fail.

RODNEY, J., concurring. McDONOUGH, J., dissenting.
Witness admitted.

### STATE v. SMITH and WROTTON.

Court of Quarter Sessions. Kent. December, 1796.

*Clayton's Notebook, 4.**

*Miller,* for defendants, objected to his testimony collectively with the Negroes, which he apprehended was also about to be

---

* This case is also reported in *Bayard's Notebook, 167; Rodney's Notes,* December 7, 1796.

offered. Ralston should have produced the deed of manumission —otherwise, his own testimony would be nothing and then the Negro for aught that appears is still a slave and cannot be a witness.

Secondly. Admitting for the sake of argument that the Negro is free, yet she is most clearly incompetent—and in this idea he was not unassisted by a judicial determination in his favor. In the case of *Collins v. Hall,* in Sussex County at October Term, 1793, the counsel for the plaintiff offered as a witness one Levin Thompson, a Negro; upon an objection made to his competency, it was proved that he came from the State of Maryland—that he was born there of free parents and ever since his residence here had been reputed a freeman. The counsel for the defendant still contended that he was incompetent: first, on principles of policy; secondly, on the construction of the Act of Assembly, February 3, 1787—and it was determined by the court upon the grounds taken by the defendant's counsel, that the witness was incompetent and he was rejected. Secondly. He argued from the Act, 1787, "no slave manumitted etc. shall give evidence against any white person though he may obtain redress," etc., by which latter clause a free Negro may recover against a white or convict him in a criminal prosecution for an injury to his person or property, provided he substantiates the charges by legal and competent evidence. But it will most certainly infringe the wise principles of *Collins v. Hall* to admit the witness about to be offered in this cause.

*Ridgely,* Attorney General, *contra.* Mr. Ralston is no party now to be affected by any decision which is now about to be made. If according to the feudal system formerly prevailing in England he had come into court and declared that his villein was free, it amounted to an affranchisement of the villein. The evidence of Ralston therefore is sufficient, independent of any manumission that the Negro is free, for it is not denied that she has been his property. Secondly, the Negro is the only witness to prove the charge contained in the indictment against the defendants—therefore, she is admissible on the necessity of the case, independently of the Act of Assembly. *Collins v. Hall* was a civil case—and the parties both white—*State v. Bender, ante,* is in point which has ever since been acquiesced in. In *State v. Beauchamp,* this term, a Negro was admitted to prove that he was struck by Beauchamp to which there was no objection.

BASSETT, C. J., and RODNEY, J., admitted the witnesses. JOHNS, J., dissented.